UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE M.,<br><br>          Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>          Defendant. | Case No.: 23-cv-0307-BGS<br><br>**ORDER REVERSING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING CASE FOR FURTHER PROCEEDINGS [ECF 19]** |

On February 16, 2023, Plaintiff Michele M.[1] commenced this action against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for a period of disability, disability insurance benefits, and supplemental security income. (ECF 1.)[2] On February 21, 2023, Plaintiff consented to the undersigned's jurisdiction to conduct all proceedings in this

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules. *See* S.D. Cal. Civ. R. 7.1(e)(6)(b).
[2] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

case. (ECF 5.)[3] Defendant filed the Administrative Record on April 17, 2023. (ECF 8-9.) On December 15, 2023, the parties filed a joint motion for judicial review of final decision of the Commissioner of Social Security. (ECF 19.)

For the following reasons, the final decision of the Commissioner is **REVERSED**, and the case is **REMANDED** for further proceedings.

## I.   BACKGROUND

### A.   Factual and Procedural History

Plaintiff, who was born in 1989, previously held employment as a home health aide, delicatessen clerk, childcare provider, and housecleaner. (AR 498-500, 781, 810-11, 874.)[4] On or about May 3 and 27, 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income, respectively, under the Social Security Act. (AR 781-94.) She alleged that she had been disabled since May 1, 2015, due to fibromyalgia, posttraumatic stress disorder ("PTSD"), panic disorder, depression, mood disorder, irritable bowel syndrome ("IBS"), cervical disc disorder at C5-C6, radiculopathy, myelopathy, generalized anxiety disorder, insomnia, overactive bladder, and gastroesophageal reflux disease ("GERD"). (AR 781, 788, 809.)[5] Plaintiff's applications were denied on initial review and again on reconsideration. (AR 645-49,

---

[3] The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature. *See* S.D. Cal. Gen. Order No. 707 (Apr. 12, 2019).
[4] "AR" refers to the Administrative Record filed on April 17, 2023. (ECF 8-9.) The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.
[5] Plaintiff previously filed applications for disability insurance benefits and supplemental security income on June 8 and 11, 2018, respectively, in which she alleged disability beginning August 3, 2017. (AR 531.) In a decision dated October 31, 2019, Administrative Law Judge Michael B. Richardson found that Plaintiff was not disabled from August 3, 2017, through the date of his decision. (AR 531-44.)

652-57.) An administrative hearing was conducted on April 12, 2022, by Administrative Law Judge ("ALJ") Andrew Verne. (AR 489-527.) On September 26, 2022, the ALJ issued a decision and concluded that Plaintiff was not disabled from May 1, 2015, through the date of his decision. (AR 429-42.)[6] Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on January 6, 2023. (AR 1-6.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

B.    **ALJ's Decision**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 and 416.920; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).[7] The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. (AR 432.) He noted that although Plaintiff showed earnings above the substantial gainful activity levels after the alleged onset date, she had periods of non-substantial gainful activity level earnings, warranting continuation to the next step in the sequential evaluation. (*Id.*) At step two, the ALJ found that Plaintiff's severe impairments included degenerative disc disease, neuropathy, fibromyalgia, anxiety disorder, posttraumatic stress disorder, panic disorder, and depressive disorder. (*Id.*) He found the following impairments were nonsevere: carpal tunnel syndrome, status post c-

---

[6] ALJ Verne considered the implications of Plaintiff's prior unfavorable decision issued on October 31, 2019, pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), but found the presumption of continuing disability did not apply because Plaintiff's file contained new and material evidence.

[7] The disability insurance benefits ("DIB") and supplemental security income ("SSI") regulations relevant to this case are virtually identical; therefore, only the DIB regulations will be cited in the remainder of this order.  Parallel SSI regulations are found in 20 C.F.R. §§ 416.900–416.999 and correspond with the last digits of the DIB cite (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

section, diabetes mellitus, IBS, obesity, marijuana use disorder, and alcohol use disorder. (*Id.*) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*)

The ALJ found that Plaintiff had the following residual functional capacity:

> [L]ight work as defined in [20 C.F.R. § 404.1567(b) and 416.967(b)] except she can lift, carry, push, and pull 20 pounds occasionally and up to 10 pounds frequently, can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday with normal breaks, can occasionally climb ramps and stairs but never climb ropes, ladders, or scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl, should avoid concentrated exposure to extreme heat, vibration, and hazards including unprotected heights and dangerous moving machinery. Mentally, is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks with breaks every two hours, no interaction with the general public, occasional work-related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or handoff of product, unable to perform fast-paced work, and would require a low-stress environment with few workplace changes.

(AR 434.)

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a housekeeping cleaner. (AR 439.) Alternatively, the ALJ found at step five that Plaintiff could perform the requirements of the representative occupations of assembler of small products, inspector, and garment sorter. (AR 440-41.) Accordingly, the ALJ concluded that Plaintiff had not been under a disability from May 1, 2015, through the date of his decision. (AR 441.)

## C. Disputed Issues

The parties have briefed two issues in their joint motion which Plaintiff asserts are grounds for reversal: (1) whether the ALJ properly rejected the opinion of Plaintiff's treating physician, Nathan McFarland, M.D., and (2) whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

## II. LEGAL STANDARDS

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'" *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. ----, ----, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. *Id.*

## III. DISCUSSION

### A. Evaluation of Treating Physician's Opinion

Plaintiff's first argument is that the ALJ erred by rejecting the opinion of Plaintiff's treating physician, Dr. McFarland, without providing sufficient explanation. (Joint Mot.,

ECF 19 at 6-11, 16.) She contends that the ALJ "cherry picked" the evidence to discount Dr. McFarland's opinion and did not explain how the physician's assessment of Plaintiff's limitations was inconsistent with her fibromyalgia diagnosis. (*Id.* at 7, 9.) She also questions the ALJ's characterization of Dr. McFarland's opinion as setting forth "extreme" limitations, when the limitations in the physician's opinion would still allow work for up to thirty hours per week. (*Id.* at 9, referring to AR 439 (ALJ's decision), 1459 (Dr. McFarland's opinion that Plaintiff could sit about four hours a day and stand/walk about two hours a day).) Defendant, citing the exhibits relied on by the ALJ in his decision, responds that the ALJ's determination that Dr. McFarland's opinion was "not persuasive" is supported by substantial evidence. (Joint Mot., ECF 19 at 12-13.)

As will be discussed further below, the Court finds that the ALJ's evaluation of Dr. McFarland's opinion is not supported by substantial evidence.

### 1.     Applicable standards

The Social Security Administration's revised 2017 regulations apply to Plaintiff because she filed her claim after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416); 20 C.F.R. § 404.1520c. Under the revised regulations, an ALJ is required to evaluate medical opinions by assessing their "persuasiveness." *See* 20 C.F.R. § 404.1520c. In determining how "persuasive" a medical source's opinions are, the "most important factors" are supportability and consistency. *Id.* § 404.1520c(b)(2). "Supportability" is the extent to which a medical opinion is supported by relevant objective medical evidence and the medical source's supporting explanations. *Id.* § 404.1520c(c)(1). "Consistency" is the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). The ALJ's decision must contain an explanation of how the ALJ considered the supportability and consistency factors. *Id.* § 404.1520c(c)(2). The ALJ is also required to consider the

treatment or examining relationship, specialization, and "other factors," but his or her decision need not contain an explanation of how these factors were considered. *Id.* § 404.1520c(b)(2), (c)(1)-(5); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). "As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence." *See Carolyn M.D. v. Kijakazi*, Case No. 2:20-cv-06725-AFM, 2021 WL 6135322, at *5 (C.D. Cal. Dec. 28, 2021) (citing *Ford*, 950 F.3d at 1154).

### 2. Dr. McFarland's opinions

Dr. McFarland, Plaintiff's treating primary care physician, completed a Physical Residual Functional Capacity questionnaire on October 6, 2021. (AR 1459-60.) He indicated that he had been Plaintiff's primary care physician since May 2019. (AR 1459.) Plaintiff's diagnoses consisted of fibromyalgia, cervical disk disease, and neuropathy. (*Id.*) The doctor opined that Plaintiff could lift and/or carry ten pounds frequently and twenty pounds rarely, and could never lift fifty pounds. (*Id.*) He stated that Plaintiff could sit for four hours in an eight-hour workday, for thirty minutes at a time, and could stand and/or walk for two hours in eight-hour workday, for fifteen minutes at a time. (*Id.*) He indicated that his patient would sometimes require unscheduled breaks of ten minutes every hour. (*Id.*) Dr. McFarland rated Plaintiff's credibility regarding her claims of pain as "good." (AR 1460.) He indicated that he was "not sure" about Plaintiff's abilities to use her hands and fingers (for handling and fingering) and her arms (for reaching). (*Id.*) The physician further opined that pain would cause Plaintiff to be off task and unproductive more than twenty-five percent of an eight-hour workday, and her impairments were likely to produce "good days and bad days." (*Id.*) He noted that Plaintiff was also under treatment for a psychiatric disorder. (*Id.*)

Dr. McFarland also completed a Physical Medical Source Statement on April 8, 2022. (AR 1492-93.) Here, he listed Plaintiff's diagnoses as fibromyalgia, cervical disk disease, lumbar disk disease, cervical and lumbar radiculopathy, and irritable bowel

syndrome. (AR 1492.) He reiterated his prior opinions regarding Plaintiff's abilities to lift, carry, stand, walk and sit. (AR 1492-93.) He further asserted that his patient would require a job that permitted shifting positions at will, and that she could rarely stoop, bend, kneel, crouch, squat, and climb stairs; could occasionally reach; and could frequently handle and finger objects. (AR 1492.) In this statement, Dr. McFarland opined that Plaintiff would be off task more than fifty percent of an eight-hour workday and would be absent more than four days a month. (AR 1493.) He also noted that Plaintiff had anxiety, depression, PTSD, and panic disorder which were being managed by psychiatry. (*Id.*)

### 3. ALJ's analysis of Dr. McFarland's opinions

The ALJ considered the "treatment provider opinions" (without specifically mentioning Dr. McFarland by name) and found them to be "unpersuasive." (AR 439.) He explained:

> The undersigned considered treatment provider opinions indicating, for example, that the claimant can lift only up to 10 pounds frequently, that she would need to take 10 minute rest breaks every hour, that she has postural limitations, that she could never use her hands, fingers, or arms for grasping, turning, manipulating, or reaching, that she would miss more than four days of work per month as a result of her impairment or treatment, and that she would be off-task more than 50% of a workday. These opinions are unpersuasive. On one hand, these opinions are made by treatment providers who included some explanations in support of their opinions. On the other hand, the extreme intensity of these limitations is not supported by the objective evidence of record, and is overly restrictive and inconsistent with the longitudinal record, as described in the analysis of the Disability Determination Services consultant findings, above.

(*Id.* (citing Exhibits B1F/5 (AR 907), B2F/22/23 (AR 971-72), B3F/7/11 (AR 980, 984), B4F/14/74/371 (AR 1008, 1068, 1365), B7F (AR 1406-07), B8F/9 (AR 1416), B12F (AR 1454-56), B13F (AR 1471-72), B16F/6/16/27 (AR 1510, 1521, 1532).)

The ALJ found the prior administrative medical findings of the Disability Determination Services consultants that Plaintiff could perform light work, subject to other limitations, to be "persuasive." (AR 438.)[8] In connection with this finding, the ALJ described the longitudinal record of Plaintiff's care as showing that Plaintiff "was positive for spinal tenderness, pain with range of motion, spasms, and neuropathy, and that she was also diagnosed with fibromyalgia." (*Id.*) He determined, however, that these findings had to be balanced "against those indicating that she is not more limited, including that her gait, sensation, deep tendon reflexes, motor functioning, sensory functioning, heart rate, heart rhythm, heart sounds, and skin turgor were normal, that her joint ranges of motion were full, that her muscle strength was 5/5, that she was able to stand and lift her arms above her head without difficulty, that she was noted to be doing well with medication, and that she was observed to be well-developed and well-nourished[.]" (*Id.* (citing the same exhibits as above, namely, Exhibits B1F/5 (AR 907), B2F/22/23 (AR 971-72), B3F/7/11 (AR 980, 984), B4F/14/74/371 (AR 1008, 1068, 1365), B7F (AR 1406-07), B8F/9 (AR 1416), B12F (AR 1454-56), B13F (AR 1471-72), B16F/6/16/27 (AR 1510, 1521, 1532).)

### 4. Analysis

An ALJ cannot reject a medical source's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. Here, the ALJ relied on the above-referenced exhibits to support his determination that Dr. McFarland's opinions were not supported by the objective evidence of record and were inconsistent with the longitudinal record. As will be discussed further below, the ALJ erred in two respects in his analysis. First, he misrepresented the contents of

---

[8] The Social Security regulations definite light work as involving frequent lifting or carrying of up to ten pounds and occasional lifting or carrying of no more than twenty pounds. *See* 20 C.F.R. § 404.1567(b).

Plaintiff's medical records. Second, the exhibits he relied on to support his analysis do not constitute substantial evidence.

### a. Misrepresentation of Plaintiff's medical records

First, the ALJ's statement that Dr. McFarland opined that Plaintiff "could never use her hands, fingers, or arms for grasping, turning, manipulating, or reaching," (*see* AR 439), is a misrepresentation of the record. Neither of Dr. McFarland's two opinions regarding Plaintiff's functional abilities include these limitations. (*See* AR 1460, 1492.) Indeed, Dr. McFarland's April 8, 2022 opinion indicates that Plaintiff could occasionally reach and could frequently handle and finger objects. (AR 1492.) The ALJ's erroneous finding apparently rests on the contents of Exhibit B12F (AR 1454, 1456), which relates to *another patient* who could not use her hands, fingers, or arms for grasping, turning, manipulating, or reaching. (AR 1454-56.) The ALJ's failure to recognize that this record did not pertain to Plaintiff was clear error, and this record obviously could not constitute substantial evidence supporting the ALJ's assessment of Dr. McFarland's opinion.[9]

### b. Exhibits relied on by the ALJ not substantial evidence

The remainder of the exhibits relied on by the ALJ also do not constitute substantial evidence supporting his determination that Dr. McFarland's opinions were unpersuasive. Exhibit B1F/5 (AR 907) reflects a consultation with Digestive Disease Associates Inc., during which Dr. Katherine Shaffer found on physical examination that Plaintiff's general appearance was "well developed, well nourished," her heart rate and rhythm were normal, and "motor and sensory [were] grossly normal." (AR 906-08.) These findings, however, which were made during an evaluation of rectal bleeding and

---

[9] The ALJ's erroneous belief that this record pertained to Plaintiff may explain why he referred to "treatment provider opinions" in his decision, (*see* AR 439), when the only treating physician to proffer an opinion regarding Plaintiff's functional limitations was Dr. McFarland.

constipation, would appear to have little bearing on Plaintiff's fibromyalgia, muscle aches and pains, cervical and lumbar disk disease, or neurological problems, which constitute the primary physical bases for her disability claim and Dr. McFarland's opinions regarding her functional limitations. (*See* SSR 12-2p, 2012 WL 3104869, at *2-3 (setting forth diagnostic criteria for fibromyalgia including, depending on which set of criteria are applied, history of widespread pain; positive tender points on physical examination; repeated manifestations of fibromyalgia symptoms, signs, or co-occurring conditions such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and exclusion of other disorders).) Therefore, the findings contained in Exhibit B1F/5 do not constitute "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion that Dr. McFarland's opinions were unsupported and inconsistent. *See Sandgathe*, 108 F.3d at 980.

      Likewise, Exhibits B2F/22/23 (AR 971-72) do not constitute substantial evidence supporting the ALJ's analysis of Dr. McFarland's opinions. While the ALJ presumably relied on this record because it reflects the finding of Dr. Roshan Kotha, Plaintiff's rheumatologist, that Plaintiff had "full range of motion of joints" on physical examination, he ignored the doctor's observations during the same visit that Plaintiff had "[d]iffuse trigger points on exam." (AR 971-72.) As set forth above, the diagnostic criteria for fibromyalgia include positive tender points on physical examination. SSR 12-2p, at *3. Consistent with her physical examination findings, and notwithstanding the "full range of motion of joints" noted by the ALJ, Dr. Kotha assessed that Plaintiff likely had fibromyalgia. (AR 972.) This record does not support the ALJ's finding that Dr. McFarland's opinions were unpersuasive.

      Exhibits B3F/7/11 (AR 980, 984), also relied on by the ALJ to support his evaluation of Dr. McFarland's opinions, reflect normal chest and lumbar x-rays.

Plaintiff's normal chest x-ray, dated June 11, 2021, has no bearing on any of her alleged impairments. And while the lumbar x-ray, dated November 5, 2020, may be relevant to Plaintiff's lumbar disk disease and lumbar radiculopathy conditions, it is not pertinent to Plaintiff's fibromyalgia, cervical disk disease, neuropathy, and cervical radiculopathy. This record, therefore, provides only little value in assessing the supportability and consistency of Dr. McFarland's opinions.

The next group of exhibits relied on by the ALJ, B4F/14/74/371 (AR 1008, 1068, 1365), also do not constitute substantial evidence supporting the ALJ's evaluation of Dr. McFarland's opinions. Exhibit B4F/14 is a treatment note dated July 7, 2021, from Dr. Bruce Bell, Plaintiff's chiropractor, reflecting that Plaintiff's heel and toe walking were normal. (AR 1008.) This same treatment record also reflects positive trigger points in the bilateral trapezia and quadratus lumborum, as well as palpable tenderness and asymmetry over the facet and sacroiliac ("SI") joints bilaterally at C1-6, T2-10, L3-5. (*Id.*) The ALJ's observation, therefore, represents a "cherry picking" of the evidence, which is improper. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Exhibit B4F/74 consists of a treatment record dated April 20, 2021, by Dr. Steven Farmer, a podiatrist, who noted during a post toenail surgery *podiatry* examination that Plaintiff was "well-developed and well-nourished." (AR 1068.) This record has no bearing on Plaintiff's claimed disabilities. Exhibit B4F/371 reflects a treatment record by Dr. McFarland cited by the ALJ because it reflects that Plaintiff had normal deep tendon reflexes. (AR 1365.) In another example of improper cherry picking, however, the ALJ fully ignored that this record reflects only that Plaintiff had normal *upper extremity* deep tendon reflexes. (*Id.*) During this same examination, Plaintiff also exhibited positive objective findings, including positive paraspinous cervical tenderness to palpation, neck pain with flexion and rotation, positive trapezius tenderness to palpation, lumbar and thoracic paraspinal tenderness, back pain with flexion and extension, and spasm of lumbar paraspinals. (*Id.*)

Exhibit B7F (AR 1406-07) is a duplicate copy of the Physical Residual Functional Capacity questionnaire completed by Dr. McFarland on October 6, 2021. (*Compare* AR 1406-07 *with* AR 1459-60.) This record simply reflects Dr. McFarland's opinions and does not provide support for the ALJ's finding that the opinion was unpersuasive.

Exhibit B8F/9 (AR 1416) consists of a treatment record prepared by Dr. Kotha, Plaintiff's rheumatologist, following a telemedicine visit on May 5, 2020, during the COVID-19 pandemic. Dr. Kotha noted that her physical examination of Plaintiff was limited by the telemedicine video platform but observed that her patient was able to stand up and lift her arms above her head without difficulty. (AR 1416.) A single instance of Plaintiff standing and lifting her arms above her head during a telemedicine visit is not "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion that Dr. McFarland's opinions were unsupported and inconsistent, and is yet another example of cherry picking the evidence, which is not permitted. *See Sandgathe*, 108 F.3d at 980; *Ghanim*, 763 F.3d at 1164.

The next exhibit relied on by the ALJ, B13F (AR 1471-72), is a treatment note by Dr. McFarland dated February 15, 2022, apparently cited by the ALJ because it indicates that Plaintiff had used medications in the past, including non-steroidal anti-inflammatory drugs ("NSAIDs"), muscle relaxers, gabapentin, and narcotic analgesics, to manage her low back pain. (AR 1471.) Nowhere does the record indicate, however, that Plaintiff was doing "well" with these medications, as represented by the ALJ. (AR 438.) Rather, Dr. McFarland noted that the medications did not provide any improvement. (AR 1471.) Therefore, the ALJ misconstrued this exhibit, and it does not support his explanation for finding Dr. McFarland's opinions unpersuasive.

Turning to the last set of exhibits relied on by the ALJ to support his evaluation of Dr. McFarland's opinions, B16F/6 consists of another post toenail surgery record dated February 14, 2022, by Dr. Farmer, the podiatrist, reflecting that Plaintiff's *podiatry*

examination showed normal deep tendon reflexes, muscle strength 5/5, no pain with range of motion or palpation of all muscles, joints, or bones, and stable gait. (AR 1510.) As above, these findings are immaterial to Plaintiff's claimed disabling impairments, and mischaracterize the record. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (stating that it is error for an ALJ to paraphrase medical evidence in a manner that is "not entirely accurate regarding the content or tone of the record"). Exhibit B16F/16, a treatment note by Dr. McFarland dated November 16, 2021, reflects that Plaintiff was "[d]oing well on current meds, no complaints" with respect to her panic disorder, irritable bowel syndrome, and neuropathy. (AR 1521.) Yet this same record also reflects that while gabapentin helped her body pain, it made her feel bloated, and she continued to experience low back pain which radiated to her legs. (AR 1519.) Exhibit B16F/27 is a treatment record dated November 4, 2021, by Dr. Bell, the chiropractor. (AR 1532.) While the ALJ cites this record to support his findings, the only notation that he could possibly be relying on is that Plaintiff's heel and toe walking were normal. (*Id.*) This is yet another instance of cherry picking because the same record also reflects numerous positive findings, including pain, tenderness, and swelling on palpation over the paraspinal musculature bilaterally in the cervical, thoracic, and lumbar regions, as well as over the SI joints; trigger points in the bilateral trapezia and quadratus lumborum; palpable tenderness and asymmetry noted over the facet and SI joints bilaterally at C1-6, T2-10, and L3-5; positive straight leg test; and restricted range of motion in the cervical and lumbar spines. (*Id.*)

      In summary, the ALJ failed to set forth substantial evidence in his decision to support his finding that Dr. McFarland's opinions were unsupported, inconsistent, and unpersuasive.

/ / /

/ / /

### B. Evaluation of Subjective Symptom Testimony

Plaintiff's second contention is that the ALJ failed to articulate clear and convincing reasons to reject her subjective limitations. (Joint Mot., ECF 19 at 17-20, 24.) In response, Defendant essentially restates the conclusions made by the ALJ in his decision. (*Id.* at 20-24.) The Court finds that the ALJ committed legal error by failing to provide specific, clear, and convincing reasons to discount Plaintiff's testimony about the severity of her symptoms.

#### 1. Plaintiff's symptom testimony

At the administrative hearing, Plaintiff testified that she is unable to work because "[t]he daily pain is too much to handle . . . [i]t is hard." (AR 502.) She explained that she has pain daily in her lower back, upper back, and legs. (AR 503.) She stated that she experiences "the worst of the bad part of the side effects" of pain medications and they have not helped to subside her pain. (*Id.*) Plaintiff testified that she was also unable to work because "[m]entally it is very hard for me to get along with people and understand things and carry out tasks." (*Id.*) She had treated with a psychiatrist for two years and taken mental health medication for several years. (AR 506-07.) She isolated herself at home and rarely went out because she "[felt] safe" there following a previous traumatic sexual assault. (AR 508-09.)

When asked if she could perform a sitting job five days a week, Plaintiff testified that she could not. (AR 511.) She explained, "My back, even sitting in a position for five minutes, starts radiating down my legs with the lower back pain and if I stand too long it goes to my upper back and my arms." (*Id.*) She was unable to stand or walk for long periods "because even with just short spurts of time, like when I have tried to walk my son to school[,] my legs just burn and I have to leave places early so I can take frequent breaks, but then it is just excruciating at the end of the process." (AR 512.) She stated that lifting even a gallon of milk was very painful in her shoulders. (AR 513.) She testified

that on a "good day," she could work for about twenty minutes and "sit on the floor and fold a few pairs of pants[.]" (*Id.*)

### 2. Applicable standards

It is up to the ALJ "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited. First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison*, 759 F.3d at 1014; *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(b). Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c). When the ALJ finds that a claimant is not malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15; *see also Lambert*, 980 F.3d at 1277; *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1102).

### 3. ALJ failed to specifically identify the testimony he found not to be credible and explain his rationale

The ALJ determined that Plaintiff satisfied step one of the two-step analysis. (AR 435.) At the second step, the ALJ stated that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent

with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) This language, which is routinely included in ALJ decisions denying benefits, is insufficient in and of itself to meet the requirements set forth in Ninth Circuit authority to reject a plaintiff's pain testimony because it does not "identify what parts of the claimant's testimony were not credible and why." *See Lambert*, 980 F.3d at 1277; *Treichler*, 775 F.3d at 1103. After making this boilerplate statement, ALJs typically identify the parts of the claimant's testimony that were not credible and explain the reasons for their finding. *Treichler*, 775 F.3d at 1103. Here, the ALJ offered the following:

> In line with the claimant's allegations, she was positive for paraspinal tenderness, pain with range of motion and spasms, and neuropathy, and she was assessed with cervical and lumbar disc disease with myelopathy and radiculopathy, indicating the need for exertional, postural, and environmental limitations. Additionally, trigger point testing was positive, and she was assessed with fibromyalgia, further supporting the need for exertional, postural, and environmental limitations [exhibit references omitted].
>
> On the other hand, her gait, deep tendon reflexes, motor functioning, and sensory functioning were observed to be normal, without the use of an assistive device, and her muscle strength was rated as 5/5 for all major muscle groups. Additionally, her joint ranges of motion were full, and she was observed as able to stand up and lift her arms above her head without difficulty. The undersigned also notes that spinal imaging from 2020 was negative, and she was described as doing well while diagnosed with neuropathy and treated with medications [citing essentially the same exhibits discussed above, namely, Exhibits B1F/5 (AR 907), B2F/22 (AR 971), B3F/11 (AR 984), B4F/74/371 (AR 1068, 1365), B8F/9 (AR 1416), B16F/6/16 (AR 1510, 1521)].
>
> Furthermore, in terms of general physical functioning, her breath sounds were observed to be clear, and her heart rate, heart rhythm, heart sounds, and skin turgor were assessed as normal. She was also described as alert, oriented, well-developed, and well-nourished. Finally, chest and abdominal imaging were described as normal [citing Exhibits B1/F5 (AR 907), B2F/22

(AR 971), B3F/7/11 (AR 980, 984), B4F/74/371 (AR 1068, 1365), B8F/9 (AR 1416), B16F/6 (AR 1510)].

(AR 436.)

In other words, rather than specifically identifying the testimony from Plaintiff that he found to not be credible and explaining his rationale, the ALJ simply summarized and cited virtually the same medical record exhibits he relied on in finding Dr. McFarland's opinions to be unpersuasive. This was insufficient. "Because the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based, the agency must explain its reasoning." *Treichler*, 775 F.3d at 1102 (internal citation and quotations omitted). The Court should not have to speculate as to the grounds for the ALJ's determinations. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). The ALJ's decision here does not set forth any specific reasons or explanation as to why he rejected Plaintiff's symptom testimony. As in *Lambert*, the Court therefore "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Plaintiff's] pain testimony [because] . . . the ALJ never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony." *See Lambert*, 980 F.3d at 1277 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494.

Ninth Circuit precedent clearly required the ALJ to do more than was done here. *See Lambert*, 980 F.3d at 1277. The ALJ thus committed legal error by failing to specifically identify which part of Plaintiff's testimony about the severity of her symptoms he found not credible and link that testimony to evidence that contradicted the testimony.

/ / /

## C. Remedy

Plaintiff requests that the Court reverse the Commissioner's decision and award benefits. (Joint Mot., ECF 19 at 24.) She requests in the alternative that the Court remand for additional proceedings. (*Id.* at 25.) The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler*, 775 F.3d at 1099. A remand for an immediate award of benefits is appropriate only in rare circumstances. *See Brown-Hunter*, 806 F.3d at 495. "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981*)*; *see also Garrison*, 759 F.3d at 1019 (noting that a Social Security case should usually be remanded to remedy defects in the administrative proceeding).

The evidence in this case does not conclusively establish that Plaintiff is disabled under the Social Security disability regulations. Rather the evidence must still be weighed and evaluated properly. Additional proceedings can remedy the defects in the ALJ's decision. Accordingly, remand for additional proceedings is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this opinion. The Clerk is directed to issue a judgment and close this case.

**IT IS SO ORDERED**.

Dated: February 9, 2024

_____
Hon. Bernard G. Skomal
United States Magistrate Judge